UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD S. WILLIAMS and                  Case No. 23-12690
CAMILE V. WILLIAMS,
    Plaintiff,                          Mark A. Goldsmith
    v.                                  United States District Judge

STUART A. GOLD, *et al.* ,              Curtis Ivy, Jr.
    Defendants.                         United States Magistrate Judge
_____/


**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS (ECF No. 10, 16, 19, 20)**


I.      **PROCEDURAL HISTORY**

Plaintiffs Edward and Camile Williams filed their *pro se* complaint on October 24, 2023, and amended on December 8, 2023. (ECF Nos. 1, 6). Defendants Stuart A. Gold, Brian Caldwell, Thomas J. Tucker, and James C. Warr filed motions to dismiss. (ECF Nos. 10, 16, 19, 20). Tucker's motion is fully briefed. (ECF Nos. 25, 32). Plaintiffs filed responses to Gold and Caldwell's motions. (ECF Nos. 22, 23). Warr filed a reply. (ECF No. 35).

This matter was referred to the undersigned for all pretrial matters. (ECF No. 9).

II.     **BACKGROUND**

A.    <u>Parties</u>

Edward S. Williams ("Mr. Williams") is a retired journeyman lineman who resides in Detroit with his daughter, Camile Williams, a high school janitor ("Ms. Williams").  (ECF No. 6, PageID.31-32).

Defendant Gold, an attorney who was a partner in the law firm Gold, Lange, Majoros & Smalarz, PC, was appointed by Defendant Judge Thomas J. Tucker as the trustee for Plaintiffs' bankruptcy estate.  (*Id.*).

Defendant Elias T. Majoros is an attorney who was a partner in the law firm Gold, Lange, Majoros & Smalarz, PC.  (*Id.*).  He represented his partner, Defendant Gold, in Mr. Williams's bankruptcy estate matter.  (*Id.*).

Mr. Williams hired Defendant James C. Warr to represent his children in the bankruptcy.  (*Id.*).

Defendant Brian Caldwell, owner of Caldwell Realty & Associates, LLC, was a realtor working with the law firm Gold, Lange, Majoros, & Smalarz, PC to close a deal on Plaintiffs' home.  (*Id.*).

B.     <u>Background</u>

Mr. Williams' wife, Celia, bought a home in 2011, and she owned the deed. (*Id.* at PageID.33).  Mr. Williams and his wife lived in the home for 12 years with their children.  (*Id.*).  In early 2019, his wife began having issues with a medication she was taking.  (*Id.*).  On March 14, 2019, while Mr. Williams was away, she signed a quitclaim deed for the home to their three children.  (*Id.*).  The quitclaim

deed was witnessed and notarized by Kimberly Coleman, a notary public who came to the Williams' home.  (*Id.*).

On June 15, 2019, Mrs. Williams passed away.  (*Id.*).  At the time, Mr. Williams's income was around $170,000, but he began incurring debt from his late wife's previous debts and funeral expenses.  (*Id.*).  On November 17, 2020, he filed for Chapter 7 bankruptcy.  (*Id.*).  Gold was appointed by the court as a trustee. (*Id.*).

Mr. Williams had paid a California law firm $2,500 to represent him, and the firm referred him to Sheena Majoros, an attorney in the Detroit area.  (*Id.*).  He failed to meet with Majoros because "she kept breaking appointments with him." (*Id.*).  He told her he no longer required her services and contacted seven more attorneys to find representation; but "after each one heard the name of 'Gold,' they refused to represent him."  (*Id.*).  Plaintiffs claim the Defendants influenced other attorneys to "not . . . represent Mr. Williams so they could convert his home for their financial gain."  (*Id.* At PageID.34).  Because of this, Mr. Williams proceeded *pro se*.  (*Id.*).  But Defendant Gold, knowing that Mr. Williams was proceeding *pro se*, kept filing court documents and sending them to Attorney Majoros.  (*Id.*). Without telling Plaintiffs, he filed an affidavit with the court to employ his own firm to represent them.  (*Id.*).  Through this, Gold and his firm "began racking up

attorney fees with the willful intent of collecting them after they forced Mr. Williams to lose his house." (*Id.*).

In April 2021, Majoros told Mr. Williams to sign an exemption form that pertained to jewelry, vehicles, and other objects, but not to his home being sold for bankruptcy purposes. (*Id.*). The form stated that Mr. Williams was no longer represented by Majoros. (*Id.* At PageID.35). Mr. Williams signed the form on April 8, 2021, and on April 10, 2021, Majoros presented Mr. Williams with a purchase agreement for one of his children to buy their home back from his estate for the sum of $50,000. (*Id.* At PageID.34).

On April 12, 2021, Majoros filed a motion to sell the home. (*Id.*). When the agreement was not fulfilled, Majoros gave Mr. Williams an addendum raising the price to $75,000. (*Id.* At PageID.35). Gold presented Mr. Williams with a second and third addendum, and, at one point, Majoros told Mr. Williams that they had an offer of $94,000 and if Mr. Williams wanted to buy his home back, he would need to pay $95,000. (*Id.*).

On August 3, 2021, Mr. Williams was granted a discharge from his bankruptcy estate. (*Id.*). On August 11, 2021, the court granted an order to have Gold reopen adversary proceedings. (*Id.*). On November 9, 2021, a motion to remove Gold was granted, but it was reversed on November 15, 2021. (ECF No. 6, PageID.35). On December 3, 2021, Gold began proceedings to "garnish Mr.

Williams' wages and bank accounts while continuing to create further debt for Mr. Williams." (*Id.*).

Mr. Williams filed a complaint with the Michigan Attorney Grievance Committee. (*Id.*). He received a response on June 23, 2022, which stated he did not provide enough evidence to proceed with an investigation. (*Id.* At PageID.36). Then, Mr. Williams hired Defendant Warr to represent his children. Defendant Warr filed several motions that were all denied by Judge Tucker. (*Id.*). Warr did not represent Mr. Williams, even though Mr. Williams paid him. (*Id.*). On April 17, 2023, Mr. Williams acted to remove Majoros, which Judge Tucker granted. (*Id.*).

Defendant Caldwell visited Plaintiffs' home on April 14, 2023 to offer them $5,000 for the keys to their home. (*Id.* At PageID.37). Mr. Williams refused. (*Id.* At PageID.36). On May 3, 2023, Mr. Williams filed a motion for injunctive relief, which Judge Tucker denied. (*Id.*). In a hearing on May 10, 2023, Judge Tucker gave Mr. Williams one week to secure a loan of $110,000 to purchase their home. (*Id.*). Mr. Williams' daughter Camron was able to secure such a loan, and Mr. Williams presented this to Majoros and Warr. (*Id.* At PageID.37). In a hearing following this, Majoros and Warr told the Court that Mr. Williams could not secure the loan. (*Id.*). Judge Tucker approved Gold's motion to sell Plaintiffs' home,

and, in the "Rip-Off publication," stated that he "Won't grant judgments for <u>black</u>

<u>Detroiters</u>." (*Id.*). (emphasis original).

C.    <u>Claims</u>

Plaintiffs bring five claims: (1) violation of their Fifth Amendment rights;

(2) civil conspiracy and/or collusion; (3) negligence/legal malpractice; (4) fraud

and misrepresentation; and (5) intentional infliction of emotional distress/tort of

outrage. (*Id.* At PageID.38).

## III.   ANALYSIS AND RECOMMENDATIONS

A.    <u>Governing Standards</u>

When deciding a motion to dismiss under Rule 12(b)(6), the Court must

"construe the complaint in the light most favorable to plaintiff and accept all

allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To

survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl.

Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim

need not contain "detailed factual allegations," but it must contain more than

"labels and conclusions" or "a formulaic recitation of the elements of a cause of

action"). Facial plausibility is established "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

The Court also holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). That said, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). "[C]ourts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.); *see also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

    B.    <u>Motion to Dismiss by Stuart A. Gold, Elias T. Majoros, Jason P. Smalarz, and Gold, Lange, Majoros & Smalarz, P.C. (ECF No. 10)</u>

In the first motion to dismiss, Defendants Stuart A. Gold, Elias T. Majoros, Jason P. Smalarz, and Gold, Lange, Majoros & Smalarz P.C. ("the Gold Defendants") argue that dismissal is appropriate because the Court lacks subject matter jurisdiction, Plaintiffs did not obtain leave of the Bankruptcy Court before filing this action, Bankruptcy Trustees and their professionals are immune to the claims, and Res Judicata/Collateral Estoppel bar the claims. (ECF No. 10).

> a. Immunity

Defendants argue they are immune to the claims raised in the complaint because they are entitled to quasi-judicial immunity (derivative immunity) from suit by third parties for actions taken in their official capacity. (*Id.* at PageID.92).

Judges enjoy absolute immunity from suit for money damages for actions taken in their judicial capacity, except when taken absent jurisdiction. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir.1994). Extension of such immunity to officials performing quasi-judicial duties has been recognized for "those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Id.* (extending immunity to probate court administrator). This determination is made using a "functional" approach, under which courts look to the nature of the function being performed rather than the identity of the actor performing it. *Id.*; *see also Forrester v. White*, 484 U.S. 219, 229 (1988). Also considered is "the

effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Id.* Bankruptcy trustees serve in various functions and may be immune for some but not all those functions. *In re McKenzie*, 716 F.3d 404, 412 (6th Cir. 2013) (citing *Weissman v. Hassett*, 47 B.R. 462, 466 (S.D.N.Y.1985)).

Bankruptcy trustees are entitled to quasi-judicial immunity from suit by third parties for actions taken in their official capacity. *Id.* "A bankruptcy trustee is liable personally only for acts willfully and deliberately in violation of his fiduciary duties." *Ford Motor Credit Co. v. Weaver,* 680 F.2d 451, 462 (6th Cir.1982). There is "a presumption that acts were a part of the trustee's duties unless Plaintiff initially alleges at the outset facts demonstrating otherwise." *In re Lowenbraun*, 453 F.3d 314, 322 (6th Cir. 2006).

Actions Gold took in the course of the bankruptcy were all in his official capacity. He was appointed by the court as a trustee in the bankruptcy matter. (ECF No. 1, PageID.6). He "file[d] court documents and sen[t] copies to Attorney Majoros" and filed an affidavit with the Court to employ his own firm, and attended phone hearings. (*Id.* at PageID.7, 10-11). As a result, Gold acted within his official capacity as a trustee and is entitled to such immunity.

Counsel for a trustee may also be "entitled to absolute immunity with respect to state law claims." *In re McKenzie*, 716 F.3d 404, 413 (6th Cir. 2013);

*see also In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993) ("counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee, where . . . they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets."  Here, Gold "filed an affidavit with the court to employ his own firm, Gold, Lange, Majoros and Smalarz, P.C. to represent him."  (ECF No. 1, PageID.6-7).  Because Gold is immune, the same analysis and conclusions would apply to his counsel, and they would also be immune.  *In re McKenzie*, 476 B.R. 515, 525 n.5 (E.D. Tenn. 2012) (citing *Allard v. Weitzman*, 991 F.2d 1236, 1241 (6th Cir. 1993)).

The motion to dismiss on the issues of Chapter 7 trustee immunity and immunity for trustees' counsel should be granted.

### b. *Barton* Doctrine

The Gold Defendants then claim Plaintiffs did not obtain leave of the Bankruptcy Court before filing this action, as required by the *Barton* rule.  (ECF No. 10, PageID.91).  Under the *Barton* Doctrine, "leave of the [bankruptcy] forum must be obtained by any party wishing to institute an action in [another] forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court."  *Allard*, 991 F.2d at 1240 (6th Cir. 1993); *see Barton v. Barbour*, 104 U.S. 126, 127 (1881).

10

Even taking all allegations in favor of the Plaintiffs, the Plaintiffs have not alleged that they sought leave of the bankruptcy court before filing this action, nor did they assert in their response that they sought leave.  As a result, and with no evidence that they sought leave, Plaintiffs' action is barred by the *Barton* doctrine.

Plaintiffs' complaint may be dismissed per the Gold Defendants based on the *Barton* doctrine and immunity alone.  But in the interest of completeness, and because other Defendants adopt the same arguments, the remaining arguments will be considered.

c.    Subject Matter Jurisdiction

The Gold Defendants argue dismissal of Plaintiffs' complaint is proper because Plaintiffs cannot establish their claims through federal question jurisdiction, diversity jurisdiction, or supplemental jurisdiction.  (ECF No. 10, PageID.90).  Defendants claim that the constitution provides no legal remedies on its own, and that because Counts 1, 2, 4, and 5 do not assert a right of action under any statute, the complaint should be dismissed.  (*Id.* at PageID.91).

The claims the Gold Defendants point to are state-law claims and a claim for violation of the Fifth Amendment to the Constitution.  The Court can exercise jurisdiction over state-law claims as "'other claims' in the same case or controversy as within the district courts' original jurisdiction."  *City of Chicago v.*

11

*Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).  So if the Court has jurisdiction over a federal claim, it can exercise jurisdiction over the state-law claims.

Turning to the Fifth Amendment claim, Defendants' cursory argument fails. They posit that since the constitution does not extend a private right of action, Plaintiffs are without recourse to sue for violation of the Fifth or Fourteenth Amendments.  They do not address whether Plaintiffs stated enough in their complaint to use the tools available to private citizens to sue for such violations— 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  Plaintiffs mentioned § 1983 in their complaint. Plaintiffs specify that the Defendants "violated the plaintiffs' . . . right to due process of law under the Fifth Amendment (as applied to the states through the 14th Amendment), "right to 'life liberty and the pursuit of happiness' under the Declaration of Independence," right to equal protection, right to freedom of speech under the First Amendment, color of law under 42 USC 1983 and 18 USC 242." (ECF No. 1, PageID.12).

Section 1983 permits a private cause of action to be brought against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  Having cited § 1983, they satisfied

their burden of establishing a private right of action *against state actors* for constitutional violations.

The Gold Defendants did not address who among them would be considered state actors or federal actors. The bankruptcy trustee, Defendant Gold, was likely acting as a federal employee and not a state actor. *See McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir. 2012) ("a bankruptcy trustee 'is an officer of the court that appoints him'") (citation omitted). But since Gold did not develop an argument challenging whether Plaintiffs sufficiently raised a *Bivens* claim against him, the undersigned will not address the issue. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citations omitted). *Bivens* allows courts to imply a right of action in some limited circumstances. *See Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520 (6th Cir. 2020). And to the extent that any of the Gold Defendants are state actors, again, Plaintiffs' citation to § 1983 is sufficient to raise a constitutional claim against them. A claim for violating the United States Constitution raises a federal question.

        d.     Res Judicata/Collateral Estoppel

The Gold Defendants then argue that Plaintiffs' violation of Fifth Amendment rights, civil conspiracy and/or collusion, fraud and misrepresentation, and intentional infliction of emotional distress claims "constitute an effort to undertake an untimely appeal of issues previously adjudicated before the bankruptcy Court. (ECF No. 10, PageID.94). As a result, Plaintiffs "are estopped from asserting any of these new claims against Defendant." (*Id.*).

"The general rule of claim preclusion, or true res judicata, is that a valid and final judgment on a claim precludes a second action on the claim or any part of it." *In re John Richards Homes Bldg. Co., L.L.C.*, 404 B.R. 220 (E.D. Mich. 2009) (citing *Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948)). A claim is identical if "the claims arose out of the same transaction or series of transactions," or if "the claims rose out of the same core of operative facts." *Id.* (quoting *Micro-Time Mgmt. Sys., Inc. v. Allard & Fish, P.C.*, 983 F.2d 1067 (6th Cir. 1993)).

Defendants have not shown which claims were brought in the previous actions. They do not provide any evidence to suggest these claims were brought previously in the Bankruptcy Court, whether they arise out of the same transaction, or whether they arise out of the same facts. In absence of such evidence, res judicata does not bar the claims.

C.  Motion to Dismiss by U-Snap-Bac, Inc., Brian Caldwell, and Brian Caldwell Realty & Associates, LLC (ECF No. 16)

    a.  Subject Matter Jurisdiction

Defendants U-Snap-Bac, Inc., Brian Caldwell, and Brian Caldwell & Associates ("the Caldwell Defendants") use the same subject matter jurisdiction language as the Gold Defendants' motion to dismiss at ECF No. 10. The causes of action against the Caldwell Defendants are the same as the claims against other Defendants: violation of Plaintiffs' Fifth Amendment rights, civil conspiracy or collusion, negligence/legal malpractice, fraud and misrepresentation, and intentional infliction of emotional distress. As a result, and as found under the analysis for the motion to dismiss at ECF No. 10, the Court has subject matter jurisdiction over the Fifth Amendment claim.

They later argue that the complaint must be dismissed because it is "in substance an untimely appeal of the Bankruptcy Court's May 17, 2023 sale order." (ECF No. 16, PageID.117). They provided no support for this statement. They argue that U-Snap-Bac was a good-faith purchaser as defined in the sale order, and that the complaint states no cause of action against U-Snap-Bac. (*Id.* at PageID.118). They also claim that "the only assertions against Defendant Caldwell and [U-Snap-Bac] were nonsensical and do not give rise to a cause of action in Federal Court." (*Id.*). The undersigned is not considering these cursory "arguments" unaccompanied by an effort at development.

      b.    Failure to State a Claim

The Caldwell Defendants then argue that Plaintiffs' complaint does not allege facts to support a claim that is plausible on its face.  They state "[i]t is crystal clear from the review of the complaint that the Plaintiff's do not meet the threshold pleading standard in *Iqbal*."  (*Id.*).

Defendants' single statement does not show that Plaintiff has not stated a claim.  Defendants have not shown that Plaintiffs' complaint allegations do not establish a cause of action.  The undersigned will not create arguments to support Defendants' brief, then evaluate those arguments.  It was Defendants' burden to show the Court why the complaint fails to state viable claims against them.

### c.   Res Judicata and/or Collateral Estoppel

The collateral estoppel/res judicata claim in this motion to dismiss is identical to the same claim in ECF No. 10.  This argument fails for the reasons stated above.

As a result, the Caldwell Defendants' motion to dismiss should be denied.

### D.   Motion to Dismiss by Thomas J. Tucker (ECF No. 19)

Judge Thomas J. Tucker argues that he is entitled to absolute judicial immunity, that he cannot be sued under color of state law under 42 U.S.C. § 1983 because he is a federal official, that Plaintiff's claims lack subject matter jurisdiction because he has absolute immunity, and that he has not been timely served.

16

"Judicial immunity is absolute: all of a judge's actions taken in an official judicial capacity are immune from suit." *Morgan v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 63 F.4th 510, 518 (6th Cir. 2023). Defendants "note that the Bankruptcy Judge in this case enjoys absolute immunity." (ECF No. 10, PageID.93). This is true. "Judicial immunity is a long-recognized common-law doctrine shielding judges." *Morgan*, 63 F.4th at 518. Judge Tucker is absolutely immune from suit.

Any claims arising from Judge Tucker's actions while presiding over Plaintiffs' cases fail. As a result, Judge Tucker's motion to dismiss should be granted and all claims against him dismissed. Given this conclusion, the undersigned will not address remaining claims.

      E.    <u>Motion to Dismiss by James C. Warr and James C. Warr & Associates, PLC (ECF No. 20)</u>

Defendants James C. Warr and James C. Warr & Associates, PLC ("the Warr Defendants") move to dismiss. (ECF No. 20, PageID.154).

      a.    Due Process

Plaintiffs claim the Warr Defendants "denied them equal protection and due process under the 14th Amendment" by "providing ineffective assistance of counsel." (ECF No. 6, PageID.41). This "breached the duty owed the plaintiffs and willfully deprived them of their property and their right to be heard." (*Id.* at

PageID.42). Defendants claim that there is no ineffective assistance of counsel claim in bankruptcy matters, and that the right to counsel "does not apply to civil proceedings" because it arises from the Sixth Amendment. (ECF No. 20, PageID.173). They also argue that because Plaintiffs "received timely notice of the proposed sale," had time to file an objection, attend a hearing on the sale, provide proof of their ability to purchase the property, and convene before the bankruptcy court, their Due Process rights were not violated. (*Id.* at PageID.176). Because of this, they claim that Plaintiffs "received more than the minimal due process" required. (*Id.*).

"[T]here is no constitutional or statutory right to effective assistance of counsel in a civil case . . . Instead, the appropriate remedy is a malpractice action against the attorney." *Alsobrook v. UPS Ground Freight, Inc.*, 352 F. App'x 1, 4 (6th Cir. 2009). Plaintiffs cannot bring an ineffective assistance of counsel claim.

Plaintiffs' arguments about due process deprivation or property also fail. To state a claim of violation of procedural due process, a Plaintiff "must plead a property interest protected by the Due Process Clause, a deprivation of this property interest, and that the state did not give him adequate procedural rights to protect against an erroneous deprivation." *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 577 (6th Cir. 2021). "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for

hearing appropriate to the nature of the case.'" *Id.* at 578 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal citations omitted)).

Defendants cite the correct law in determining whether there was a due process violation.  In *Garcia v. Fed. Nat. Mortg. Ass'n*, 782 F.3d 736 (6th Cir. 2015), the Court found that notions of due process under common law and Supreme Court precedent "are not at odds with" Michigan's foreclosure-by-advertisement statute, both of which require "notice and opportunities to cure the default or redeem the property at several points before the borrower's rights are fully extinguished." *Id.* at 742.  Here, Plaintiffs had ample notice of the sale, attended a telephonic hearing on the sale, were informed that Mr. Williams had one week to secure a loan to purchase his home, and attended a second telephonic hearing.  (ECF No. 6, PageID.36-38).  Even taking all facts in favor of the Plaintiffs, it is not apparent that their due process rights were violated.

        b.    Conspiracy

Plaintiff brings a claim of civil conspiracy and/or collusion.  (ECF No. 6, PageID.43).  He claims the attorneys "devise[d] a schemed plan to illegally deprive plaintiffs of their property" and that the Defendants engaged in illegal and unethical activities to cause Plaintiffs emotional distress.  (*Id.* at PageID.42). Primarily, Plaintiffs state that "Attorney Gold act[ed] as the ringleader with

partners in his law firm and engag[ed] in communications and correspondence involving false statements." (*Id.*).

Defendants state that because "none of the other counts in the Williamses' complaint [are] valid," and that "[w]ithout a valid tort, there can be no valid claim about conspiring to commit a tort." (ECF No. 20, PageID.177). Defendants also state that there are "no plausible factual allegations suggesting that James Warr conspired to take the Detroit property." (*Id.* at PageID.178).

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351 (1992). "Civil conspiracy is not a claim of its own; 'it is necessary to prove a separate, actionable tort.'" *Prudential Def. Sols., Inc. v. Graham*, 2020 WL 6382862, at *9 (E.D. Mich. Oct. 30, 2020); *see also Detroit Will Breathe v. City of Detroit*, 524 F. Supp. 3d 704, 710 (E.D. Mich. 2021) ("Cause of action does not result from the conspiracy but from the acts done.").

Defendants are correct in recognizing that because Plaintiffs' other claims fail, their conspiracy claim is negated. Defendant Warr is also not mentioned in the conspiracy claim, nor are there facts suggesting Warr could deprive his own clients of their property or any other illegal action.

      c.    Negligence/Legal Malpractice

Plaintiffs then argue that the Warr Defendants' failure to provide effective assistance of counsel constitutes negligence/legal malpractice. (ECF No. 6, PageID.43). This is because they did not meet the proper standard of care and conspired with defendants and others "to convert plaintiffs' property for their own financial gain." (*Id.*).

To bring a legal malpractice claim, Plaintiff must show "(1) the existence of an attorney-client relationship, (2) negligence in the legal representation of the plaintiff, (3) that the negligence was the proximate cause of an injury, and (4) the fact and the extent of the injury alleged." *Est. of Carpenter by Reese v. Weiner & Assocs. PLLC*, 2017 WL 4942801, at *5 (Mich. App. Oct. 31, 2017) (internal citations omitted). To show negligence, a party must demonstrate a duty owed, breach of the duty, causation, and damages. *Case v. Consumer Power Co.*, 615 N.W.2d 17, 20 (Mich. 2000).

First, Defendants argue that Mr. Williams was not Warr's client, as he was hired to represent Mr. Williams' children, and therefore Mr. Williams cannot bring a claim of legal malpractice against him. An attorney-client relationship focuses "on the putative client's subjective belief that he is consulting a lawyer in his professional capacity, and on his intent to seek professional legal advice." *MJK Fam. LLC v. Corp. Eagle Mgmt. Servs., Inc.*, 676 F. Supp. 2d 584, 592 (E.D. Mich. 2009) (citations omitted). "[R]endering of legal advice and legal services by the

21

attorney and the client's reliance on that advice or those services is the benchmark of an attorney-client relationship." *Auburn Sales, Inc. v. Bryen*, at \*4 2023 WL 2717443 (Mich. App. Mar. 30, 2023) (internal citations omitted). "The existence of an attorney-client relationship is not dependent on a formal contract or the payment of a fee." *Id.* "Whether in any case an attorney is professionally employed depends on the relations and mutual understanding of the parties, on what was said and done, and all the facts and circumstances of the particular undertaking." *Case v. Ranney*, 140 N.W.2d 943, 946 (1913).

An attorney-client relationship was not formed between Mr. Williams and Warr. Mr. Williams gave Warr "$2,500 to represent his children and another $2,500 to handle the remaining issues in the bankruptcy estate matter." (ECF No. 6, PageID.36). Mr. Williams knew that Warr "would not file documents for Mr. Williams or assist him legally, even though he had been paid by him." (*Id.*). That said, Ms. Williams, who is the second plaintiff in this case, is Mr. Williams daughter and therefore undoubtedly Warr's client. She had an attorney-client relationship with Warr.

Even so, as stated above, Plaintiffs do not allege facts to demonstrate a breach of his duty, any causation, or any injury. As a result, the motion to dismiss on the issue of legal malpractice or negligence should be granted.

        d.     Fraud and Misrepresentation

Plaintiffs allege Defendants participated "in a plan to engage in overt acts to fraudulently and illegally deprive plaintiffs of their property" with "full knowledge that their acts and failures to act were substantially certain to result in injury and detriment." (*Id.* at PageID.44). As a result, Plaintiffs claim they engaged in fraud by commission/silence and intentional fraud." (*Id.*).

"In alleging fraud . . . a party must state with particularity the circumstances constituting fraud." *Rocket Mortg., LLC v. Cito Mech. Design, Inc.*, 2024 WL 2876922 (E.D. Mich. Apr. 22, 2024). To state a claim for fraud, a Plaintiff must allege facts establishing that

> (1) the defendant made a material misrepresentation; (2) the representation was false; (3) when the defendant made the misrepresentation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

*Miller v. Joaquin*, 431 F. Supp. 3d 906, 916 (E.D. Mich. 2019). To allege silent fraud, a plaintiff must show "there was a legal duty of disclosure." *Buntea v. State Farm Mut. Auto Ins. Co.*, 467 F. Supp. 2d 740, 745 (E.D. Mich. 2006). A "misrepresentation occurs when a party suppresses part of the truth when asked, not by mere nondisclosure." *Id.*

As Defendants state, and taking all facts in favor of the Plaintiffs, Plaintiffs have provided no specifics about what was withheld, whether there was a duty of

disclosure, and whether the disclosures were suppressed or false.  Nor did Plaintiffs say whether they acted in reliance on any fraudulent representations or false representations.  As a result, Plaintiffs' fraud claims should be dismissed with respect to Warr.

e.      Intentional Infliction of Emotional Distress

Defendants state that Plaintiffs' complaint "does not describe any behavior from Warr or his firm that could possibly meet [the] high threshold for liability" under intentional infliction of emotional distress.  (ECF No. 20, PageID.184). Warr and his firm represented Plaintiffs "in their bankruptcy proceeding" and "when the Bankruptcy Court entered an order requiring the sale of their property." (*Id.*).  Defendants argue that none of this conduct is outrageous or extreme enough to support a claim of intentional infliction of emotional distress.  (*Id.*).

In order to establish a claim for intentional infliction of emotional distress under Michigan law, a plaintiff must demonstrate "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress."  *Gibbs v. Voith Indus. Servs., Inc.*, 60 F.3d 780, 801 (E.D. Mich. 2014) (internal citations omitted).  "The test to determine whether a person's conduct was extreme and outrageous is whether recitation of the facts of the case to an average member of the community 'would arouse his resentment against the actor, and lead

him to exclaim, "Outrageous!"" *Lewis v. LeGrow,* 670 N.W.2d 675, 689 (Mich.
App. Aug. 21, 2003) (citations omitted).

As Defendants here state, their conduct does not demonstrate extreme and
outrageous conduct. (ECF No. 20, PageID.183). Mr. Williams hired Warr to
represent his children. (ECF No. 6, PageID.32). Warr "filed several motions
including a motion to cease and desist." (*Id.* at PageID.36). Though the motions
were "all denied by Judge Tucker," Warr did not act in any extreme and
outrageous way. Michigan courts regularly reject claims for intentional infliction
of emotional distress for conduct much worse than at issue. In *McKenzie v.
Berggren*, 99 F. App'x 616, 621 (6th Cir. 2004), an attorney yelling at his client
and "strong-arm[ing] [him] into a settlement" was not extreme and outrageous
conduct. Even "filing . . . a groundless lawsuit could not constitute extreme and
outrageous conduct." *Patrich v. Farber*, 2009 WL 10680127 (E.D. Mich. June 2,
2009) (citing *Early Detection Ctr., PC v. New York Life Ins. Co.*, 157 Mich. App.
618, 624-26 (1987)). Filing motions which are later denied is not intentional
infliction of emotional distress.

Mr. Williams then "wanted Attorney Warr to file a motion for injunctive
relief . . . [and] Warr told him that it was a conflict of interest for him to file court
documents on his behalf" and then did not advise him how to file it properly, and,
when Williams filed the motion, it was dismissed. (ECF No. 6, PageID.36). Later,

"Warr . . . lied to the court and said that Mr. Williams and his family were unable to secure the loan." (*Id.* at PageID.39). Again, this conduct is neither extreme nor outrageous. Plaintiff's intentional infliction of emotional distress claim fails with respect to Warr.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Gold Defendants' motion to dismiss should be **GRANTED IN PART**. Plaintiffs' claims against the Gold Defendants should be dismissed based on immunity and the *Barton* doctrine.

The undersigned further **RECCOMMENDS** that the Caldwell Defendants motion to dismiss should be **DENIED** and that Judge Tucker and the Warr Defendants' motions to dismiss should be **GRANTED**.

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

Date:  July 18, 2024.                 <u>s/Curtis Ivy, Jr.</u>
                                               Curtis Ivy, Jr.
                                               United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on July 18, 2024.

<u>s/Sara Krause</u>
Case Manager
(810) 341-7850